IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No.  21-cv-00622-PAB-NRN

EIGHTH DISTRICT ELECTRICAL PENSION FUND;
EIGHTH DISTRICT ELECTRICAL PENSION FUND ANNUITY PLAN;
EIGHTH DISTRICT ELECTRICAL BENEFIT FUND;
SUSAN KING, as Chair of the Delinquency Committee for the Eighth District Electrical
Pension Fund, Eighth District Electrical Pension Fund Annuity Plan, and Eighth District
Electrical Benefit Fund;
NATIONAL ELECTRICAL BENEFIT FUND;
DENVER ELECTRICAL JOINT APPRENTICESHIP AND TRAINING TRUST FUND;
ROCKY MOUNTAIN CHAPTER, NECA;
NATIONAL LABOR-MANAGEMENT COOPERATION FUND;
DENVER JOINT INDUSTRY PROMOTIONAL FUND; and
INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS LOCAL UNION NO.
68,

      Plaintiffs,

v.

WATTS ELECTRIC, LLC d/b/a WATTS GREEN ELECTRIC; and
BRIAN WATTS,

      Defendants.

---

## ORDER

---

    This matter is before the Court on Plaintiffs' Motion for Default Judgment

Pursuant to Fed. R. Civ. P. 55(b) [Docket No. 12].

## I.  BACKGROUND[1]

    Plaintiffs Eighth District Electrical Pension Fund ("Pension Fund"); Eighth District

---

[1] Because of the Clerk of Court's entry of default, Docket No. 11, the allegations
in plaintiffs' complaint, Docket No. 1, are deemed admitted.  *See Olcott v. Del. Flood
Co.*, 327 F.3d 1115, 1125 (10th Cir. 2003).

Electrical Pension Fund Annuity Plan ("Annuity Plan"); Eighth District Electrical Benefit Fund ("Benefit Fund"); Susan King ("King"), Chair of the Delinquency Committee for the Pension Fund, Annuity Plan, and Benefit Fund; National Electrical Benefit Fund ("NEBF"); Denver Electrical Joint Apprenticeship and Training Trust Fund ("JATC"); Rocky Mountain Chapter, NECA ("NECA"); National Labor-Management Cooperation Fund ("NLMCF"); Denver Joint Industry Promotional Fund ("DJIPF"); and International Brotherhood of Electrical Workers Local Union No. 68 ("Local 68") brought this action to to collect delinquent fringe benefit contributions from defendants pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1132, 1145, and collective bargaining agreements ("CBAs") entered into with plaintiff International Brotherhood of Electrical Workers Local Union No. 68 ("Local 68"). Docket No. 1 at 2, ¶ 1.  Plaintiffs also seek to collect membership dues from defendants pursuant to the Labor Management Relations Act, 29 U.S.C. § 185, and the CBAs, and to collect other contributions or deductions under the CBAs and a payment agreement executed by defendants on July 12, 2019 ("Payment Agreement").  *Id.*

The Pension Fund, Annuity Plan, Benefit Fund, NEBF, JATC (together, "Plaintiff Funds") are "employee benefit plans" within the meaning of 29 U.S.C. § 1002(3).  *Id.* at 2–3, ¶¶ 2–4, 6–7.  They are also each a "multiemployer plan," under 29 U.S.C. § 1002(37) and were established and have been maintained pursuant to 29 U.S.C. § 186(c)(5).  *Id.*, at 3, ¶ 8.  The Plaintiff Funds operate under "Trust Agreements," which are incorporated by reference into the CBAs between Local 68 and defendants.  *Id.* at 6, ¶ 20.  King brings this lawsuit in her official capacity and fiduciary of the Pension Fund, Annuity Plan, and Benefit Fund.  *Id.* at 3, ¶ 5.

2

NECA is an employer association that maintains an administrative maintenance fund as authorized by CBAs with Local 68.  *Id.* at 4, ¶ 9.  NLMCF and DJIPF are "labor-management cooperation fund[s]" created under the Labor Management Cooperation Act of 1978, 29 U.S.C. §§ 175a(a), 186(c)(9), and are collection agents for NLMCF. *Id.*, ¶¶ 10–11.  Local 68 is a labor organization within the meaning of the Labor Management Relations Act, 29 U.S.C. §§ 152, 185(a).  *Id.*, ¶ 12.

Defendant Brian Watts ("Watts") is the owner of Watts Electric, LLC, doing business as Watts Green Electric ("Watts Electric"), which is a limited liability company employer within the meaning of 29 U.S.C. § 1002(5).  *Id.* at 4–5, ¶¶ 13–14.

Watts Electric is a party to CBAs with Local 68 through a letter of assent.  *Id.* at 5, ¶ 18.  The CBAs govern the terms and conditions of the employment of Watts Electric's employees performing work covered by the CBAs.  *Id.*  The CBAs require Watts Electric to make contributions and/or payroll deductions in certain amounts.  *Id.* at 6, ¶ 21.  Watts Electric, however, failed to make all required contributions for April 2018 through March 2019.  *Id.*, ¶ 22.  As a result, on July 12, 2019, Watts Electric and plaintiffs entered into the Payment Agreement, in which defendants agreed to pay plaintiffs $34,463.31 for delinquent contributions, interest, and attorney's fees due under CBAs.  *Id.*, ¶ 23.  Watts agreed to be individually liable and responsible for the payment of all amounts due under the Payment Agreement and all contributions accruing before the Payment Agreement is paid in full.  *Id.* at 7, ¶ 27.  Defendants agreed to be jointly and severally liable and responsible for the obligations in the Payment Agreement.  *Id.*

3

Defendants agreed to make these payments in bi-weekly installments set forth in an amortization schedule, beginning July 12, 2019 and ending April 1, 2022. *Id.* at 6–7, ¶ 24. Defendants, however, failed to make any payments on November 13, 2020, November 27, 2020, December 11, 2020, December 25, 2020, January 22, 2021, or February 5, 2021 as agreed in the Payment Agreement. *Id.* at 7, ¶ 25. On February 3, 2021, plaintiffs provided defendants notice of default and an opportunity to cure, as set forth in the Payment Agreement, but defendants have failed to cure the default. *Id.*, ¶ 26. Plaintiffs have therefore exercised their option to accelerate the balance due and to file this lawsuit. *Id.*

The CBAs require Watts Electric to make contributions to Plaintiff Funds, which provide "health, retirement, training, and other benefits" to employees of contractors that are signatories to CBAs with Local 68, like Watts Electric. *Id.* at 8, ¶ 31. Watts Electric must submit monthly reports and "fringe benefit contributions" to the Plaintiff Funds as determined by the number of hours of covered work that Watts Electric employees performed at the rates that Plaintiff Funds established. *Id.*, ¶ 32. The CBAs require contributions be made at the end of each month. *Id.*, ¶ 33. A contribution not made by the 15th of the following month is delinquent. *Id.*

In addition to the payment of past-due amounts, Watts Electric agreed in the Payment Agreement to keep current in its obligations to plaintiffs for the duration of the Payment Agreement. *Id.* at 9, ¶ 34. Watts agreed to be individually liable and responsible for the payment of the current contributions, in addition to Watts's individual liability for payment of past-due amounts discussed previously, and defendants agreed

4

to be jointly and severally liable for these contributions and payroll deductions. *Id.*, ¶ 35. Watts Electric, however, has failed contribute to the Plaintiff Funds for the hours of covered work that its employees performed. *Id.*, ¶ 36. Watts Electric has breached the CBAs and Trust Agreements, and therefore its obligations under ERISA, and both defendants have breached the Payment Agreement. *Id.*

The CBAs, Trust Agreements, and Payment Agreements provide remedies to the Plaintiff Funds, including collection, attorney's fees, interest, and liquidated damages, in the event an employer fails to fulfill its obligations. *Id.* at 10, ¶ 38. The CBAs, Trust Agreements, and Payment Agreements provide that defendants are jointly and severally liable to the Pension Fund, Benefit Fund, Annuity Plan, and JATC for liquidated damages at 10% and to NEBF for liquidated damages at 20% for unpaid or untimely contributions. *Id.*, ¶ 39.

Defendants are also jointly and severally liable to the Pension Fund, Benefit Fund, Annuity Fund, and JATC for interest at the rate of the federal short-term interest rate for underpayment, plus 2%, and to NEBF at 10% annually, compounded monthly, upon the untimely or unpaid contributions. *Id.* at 11, ¶ 40. In addition, defendants are jointly and severally liable for attorney's fees and other costs. *Id.*, ¶ 41.

The CBAs require Watts Electric to transmit the contributions to NECA for the administrative management fund, *id.* at 12, ¶ 42; to NLMCF, *id.* at 13, ¶ 46; and to NECA for DJIPF. *Id.* at 14, ¶ 49. Watts Electric, however, has failed to do so for work performed in November and December 2020 and has thereby breached the CBAs. *Id.* at 12–13, 15–16, ¶¶ 43–44, 47, 50. Defendants are jointly and severally liable for

liquidated damages and interest for unreported covered work.  *Id.* at 12–14 ¶¶ 44, 47, 50.

The CBAs also require that Watts Electric deduct work assessments from the wages of all covered employees, based upon each hour worked by such employees, in accordance with 29 U.S.C. § 186(c), by the end of each month.  *Id.* at 15, ¶¶ 51–52. Watts Electric, however, failed to transmit to Local 68 work assessments deducted from covered employees' wages for work performed in November and December 2020, meaning that Watts Electric is in breach of the Payment Agreement.  *Id.* at 15–16, ¶ 53.

Plaintiffs bring two claims against defendant: (1) breach of the Payment Agreement for delinquent contributions, *id.* at 5–8, ¶¶ 17–29, and (2) delinquent contributions arising after the Payment Agreement. *Id.* at 8–16, ¶¶ 30–53.

## II.  LEGAL STANDARD

In order to obtain a judgment by default, a party must follow the two-step process described in Fed. R. Civ. P. 55.  First, the party must seek an entry of default from the Clerk of the Court under Rule 55(a).  Second, after default has been entered by the Clerk, the party must seek judgment under the strictures of Rule 55(b).  *See Williams v. Smithson*, 57 F.3d 1081, 1995 WL 365988, at *1 (10th Cir. June 20, 1995) (unpublished table decision) (citing *Meehan v. Snow*, 652 F.2d 274, 276 (2d Cir. 1981)).

The decision to enter default judgment is "committed to the district court's sound discretion."  *Olcott*, 327 F.3d at 1124 (citation omitted).  In exercising that discretion, the Court considers that "[s]trong policies favor resolution of disputes on their merits." *Ruplinger v. Rains*, 946 F.2d 731, 732 (10th Cir. 1991) (quotation and citations

6

omitted).  "The default judgment must normally be viewed as available only when the adversary process has been halted because of an essentially unresponsive party." *Id.* It serves to protect plaintiffs against "interminable delay and continued uncertainty as to his rights." *Id.* at 733.  When "ruling on a motion for default judgment, the court may rely on detailed affidavits or documentary evidence to determine the appropriate sum for the default judgment." *Seme v. E&H Prof'l Sec. Co., Inc.*, No. 08-cv-01569-RPM-KMT, 2010 WL 1553786, at *11 (D. Colo. Mar. 19, 2010); *see also Vibe Tech., LLC v. Suddath*, No. 06-cv-00812-LTB-MEH, 2009 WL 2055186, at *1 (D. Colo. July 10, 2009).

A party may not simply sit out the litigation without consequence.  *See Cessna Fin. Corp. v. Bielenberg Masonry Contracting, Inc.*, 715 F.2d 1442, 1444–45 (10th Cir. 1983) ("[A] workable system of justice requires that litigants not be free to appear at their pleasure.  We therefore must hold parties and their attorneys to a reasonably high standard of diligence in observing the courts' rules of procedure.  The threat of judgment by default serves as an incentive to meet this standard").  One such consequence is that, upon the entry of default against a defendant, the well-pleaded allegations in the complaint are deemed admitted.  *See* Charles Wright, Arthur Miller & Mary Kane, *Fed. Prac. & Proc.* § 2688 (3d ed. 2010).  "Even after default, however, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." *Seme v. E & H Pro. Sec. Co.*, No. 08-cv-01569-RPM-KMT, 2010 WL 1553786, at *2 (D. Colo. Mar. 19, 2010), *report and recommendation adopted*, 2010 WL 1553788 (D. Colo. Apr. 16, 2010).  A court need not accept conclusory allegations.  *Moffett v. Halliburton*

7

*Energy Servs., Inc.* 291 F.3d 1227, 1232 (10th Cir. 2002).  Although "[s]pecific facts are not necessary" in order to state a claim, *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)), the well-pleaded facts must "permit the court to infer more than the mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (internal quotation and alteration marks omitted).  Thus, even though modern rules of pleading are somewhat forgiving, "a complaint still must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008) (quotation and citation omitted).

## III.  ANALYSIS

### A.  Jurisdiction

Before addressing the merits of plaintiffs' motion for default judgment, the Court must determine whether it has jurisdiction over this case.  *See Dennis Garberg & Assocs., Inc. v. Pack-Tech Int'l Corp.*, 115 F.3d 767, 772 (10th Cir. 1997) (holding that "a district court must determine whether it has jurisdiction over the defendant before entering judgment by default against a party who has not appeared in the case").

#### 1.  Subject Matter Jurisdiction

Plaintiffs assert that the Court has subject matter jurisdiction pursuant to 29 U.S.C. § 1132(e)(1), Docket No. 12 at 3, ¶ 7, which provides, in relevant part, that "the district courts of the United States shall have exclusive jurisdiction of civil actions under this subchapter brought by the Secretary or by a participant, beneficiary, fiduciary,"

8

administrator, "or any person referred to in section 1021(f)(1) of this title." Because this matter arises out of ERISA, the Court also has federal-question jurisdiction pursuant to 28 U.S.C. § 1331. *See* Docket No. 12 at 4, ¶ 10.

### 2. *Personal Jurisdiction*

The plaintiff bears the burden of establishing personal jurisdiction. *Rambo v. Am. S. Ins. Co.*, 839 F.2d 1415, 1417 (10th Cir. 1988). The plaintiff can satisfy its burden by making a *prima facie* showing. *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008). The Court will accept the well-pled allegations of the complaint as true in determining whether plaintiff has made a *prima facie* showing that personal jurisdiction exists. *AST Sports Sci., Inc. v. CLF Distrib. Ltd.*, 514 F.3d 1054, 1057 (10th Cir. 2008). If the presence or absence of personal jurisdiction can be established by reference to the complaint, the Court need not look further. *Id.* The plaintiff, however, may also make this *prima facie* showing by putting forth evidence that, if proven to be true, would support jurisdiction over the defendant. *Dudnikov*, 514 F.3d at 1070.

"In determining whether a federal court has personal jurisdiction over a defendant, the court must determine (1) whether the applicable statute potentially confers jurisdiction by authorizing service of process on the defendant and (2) whether the exercise of jurisdiction comports with due process." *Trujillo v. Williams*, 465 F.3d 1210, 1217 (10th Cir. 2006) (quoting *Peay v. BellSouth Med. Assistance Plan*, 205 F.3d 1206, 1209 (10th Cir. 2000)). The Colorado long-arm statute, Colo. Rev. Stat. § 13-1-124, has been construed to extend jurisdiction to the full extent permitted by the

Constitution, so the jurisdictional analysis here reduces to a single inquiry of whether jurisdiction offends due process. *See Dudnikov*, 514 F.3d at 1070; *Archangel Diamond Corp. v. Lukoil*, 123 P.3d 1187, 1193 (Colo. 2008). Personal jurisdiction comports with due process where a defendant has minimum contacts with the forum state and where those contacts are such that assuming jurisdiction does not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Minimum contacts may be established under the doctrines of general jurisdiction or specific jurisdiction. Whether the Court has personal jurisdiction over defendants also depends on whether service of process was adequate. *Holcim (US), Inc. v. Limerock Materials, LLC*, No. 11-cv-00686-REB-CBS, 2012 WL 4442757, at *4 (D. Colo. Sept. 26, 2012).

Plaintiffs allege that Watts Electric is a limited liability company "organized and existing under the laws of the State of Colorado." Docket No. 1 at 4–5, ¶ 13. For corporations, "the place of incorporation and principal place of business are 'paradig[m] . . . bases for general jurisdiction.'" *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011)). "Courts have held that *Daimler* applies with equal force to limited liability companies." *Bliss v. Change Healthcare Operations LLC*, 2021 WL 706770, at *1 (W.D. Okla. Feb. 23, 2021) (collecting cases). The Court finds that plaintiffs' allegations that Watts electric is a Colorado LLC and that its headquarters here are sufficient to establish that the Court has general personal jurisdiction over Watts Electric. *See Daimler*, 571 U.S. at 137; *Bliss*, 2021 WL 706770, at *1; *Ally Fin., Inc. v. Allypayments, LLC*, No. 20-cv-

02517-PAB, 2021 WL 4426950, at *3 (D. Colo. Sept. 27, 2021).

Plaintiffs also allege that Watts is an "individual who resides in the State of Colorado and is an owner of Watts Electric." Docket No. 1 at 5, ¶ 14. This is persuasive evidence of the Court's general personal jurisdiction over Watts. *See United States v. Olsen*, No. 14-cv-03302-WJM-KLM, 2016 WL 322554, at *2 (D. Colo. Jan. 27, 2016) (noting that the District of Colorado has personal jurisdiction over Colorado residents "because the District of Colorado encompasses the entire state"); *United States v. Bauer*, 18-cv-00034-PAB-NRN, 2020 WL 5076754, at *2 (D. Colo. Aug. 25, 2020). However, whether the Court has personal jurisdiction over Watts also depends on whether service of process was adequate. *Bauer*, 2020 WL 5076754, at *3; *see also Holcim*, 2012 WL 4442757, at *4.

Plaintiffs state that they served defendants in Colorado on March 6, 2021. Docket No. 12 at 4, ¶ 13. Federal Rule of Civil Procedure 4 provides the rules for service of process. A defendant may be served by the means specified in the rule or by means provided in "the district court is located or where service is made." Fed. R. Civ. P. 4(h)(1)(a); Fed. R. Civ. P. 4(e)(1). The proofs of service for both defendants indicate that the summonses were left with Watts, in his individual capacity and in his capacity as managing agent for Watts Electric. *See* Docket No. 12 at 5, ¶ 15; *see also* Docket Nos. 7-1 (Watts), 7-2 (Watts Electric). The Court finds this is sufficient service of process for both defendants. Service was proper as to Watts because Rule 4(e) provides that an individual may be served in a judicial district by, among other things, "delivering a copy of the summons and of the complaint to the individual personally."

Fed. R. Civ. P. 4(e)(2)(A).  Service was proper as to Watts Electric because Rule 4(h) provides that a corporation, partnership, or association may be served by, among other things, "delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process."  Fed. R. Civ. P. 4(h)(1)(B).  The Court therefore finds that it has general personal jurisdiction over defendants.

### B.  Default Judgment

The Court must next decide "whether the unchallenged facts constitute a legitimate cause of action" such that a judgment should be entered.  *Bixler v. Foster*, 596 F.3d 751, 762 (10th Cir. 2010) (quotation omitted)).  "There must be a sufficient basis in the pleadings for the judgment entered."  *Id.* (quotation omitted).  "[A] party is not entitled to a default judgment as of right; rather the entry of a default judgment is entrusted to the 'sound judicial discretion' of the court."  *Greenwich Ins. Co. v. Daniel Law Firm*, No. 07-cv-2445-LTB-MJW, 2008 WL 793606, at *2 (D. Colo. Mar. 22, 2008) (quotation omitted).

As previously mentioned, due to the entry of default, the well-pled facts of the complaint are deemed admitted.  *Olcott*, 327 F.3d at 1125.  The undisputed facts set forth by plaintiffs in the affidavit of Phillip Ornelas, Delinquency Coordinator for the Pension Fund, Annuity Plan, and Benefit Fund, *see* Docket No. 12-2, are also accepted as true.  *See Vibe Tech.*, 2009 WL 2055186, at *1.  Accepting these allegations as true, the Court finds that plaintiffs are entitled to judgment by default because defendants have failed to pay all contributions plus accrued interest and liquidated damages owed

to plaintiffs.  *See Reg'l. Dist. Council v. Mile High Rodbusters, Inc.*, 82 F. Supp. 3d 1235, 1243 (D. Colo. 2015) (citing *Bd. of Trustees, Colo. Sheet Metal Workers' Local 9 Family Health Plan v. J & C Fabricating Co.*, No. 07-cv-01970-REB-MEH, 2009 WL 306731, at *2 (D. Colo. Feb. 6, 2009)).  In *Mile High Rodbusters*, the court found that the defendants' failure to "remit the required contributions and accrued interest [was] a . . . violation of Section 515 of ERISA" because, under "Sections 515 and 502(g) of ERISA, 29 U.S.C. §§ 1145 and 1132(g)(2), [the d]efendant [wa]s obligated to pay the full amount of its delinquent contributions under the terms of the Agreement, plus interest."  82 F. Supp. 3d at 1243.  This action was also brought under 29 U.S.C. §§ 1145, 1132(g)(2).  *See, e.g.*, Docket No. 12 at 3, ¶ 5.  As in *Mile High Rodbusters*, defendants have failed to pay contributions and interest as ERISA requires.

Mr. Ornelas's affidavit confirms the facts in the complaint.  *See* Docket No. 12-2; *Olcott*, 327 F.3d at 1125; *Vibe Tech.*, 2009 WL 2055186, at *1.  Watts Electric performed work covered by the CBAs entered into between Local 68 and NECA, to which Watts Electric is a signatory.  Docket No. 12-2 at 3, ¶ 5.  Watts Electric, as a signatory, was obligated to contribute timely to plaintiffs.  *Id.*, ¶ 6.  Under the Trust Agreements and CBAs, employers must pay interest on their delinquent contributions at prime plus 2% for the Pension Fund, Annuity Plan, and JATC, and at 10% annually, compounded monthly, for NEBF, NLMCF and DJIPF.  *Id.*, ¶ 7.  Because Watts Electric was delinquent, it entered into the Payment Agreement, which required it to make biweekly payments; however, Watts Electric failed to make the payments as required.  *Id.* at 4, ¶ 9.  After this lawsuit was filed, Watts Electric paid the contributions owed for

November 2020 and December 2020, but failed to pay the liquidated damages and interest.  *Id.* at 5, ¶ 13.

Because the Court deems the well-pled facts of the complaint and Mr. Ornelas's affidavit as true, the Court finds that plaintiffs have established that defendants failed to pay the required contributions and interest and that default judgment should be entered against defendants.

The Court's inquiry is not complete, however, as default judgment requires the Court to ascertain the amount of damages.  *See Mile High Rodbusters*, 82 F. Supp. 3d at 1243 (citing *Herzfeld v. Parker*, 100 F.R.D. 770, 773 (D. Colo. 1984)).  "Actual proof must support any default judgment for money damages where there is an uncertainty as to the amount."  *Id.* (citing *Klapprott v. United States*, 335 U.S. 601, 611–12 (1949).  Again, the Court accepts the facts set forth in the complaint, affidavits, and exhibits.  *Id.*

 Section 502(g)(2) of ERISA, 29 U.S.C. § 1132(g)(2) states

> In any action under this title by a fiduciary for or on behalf of a plan to enforce section 515 in which a judgment in favor of the plan is awarded, the court shall award the plan:
>
> > (A) the unpaid contributions,
> >
> > (B) interest on the unpaid contributions,
> >
> > (C) an amount equal to the greater of:
> >
> > > (i) interest on the unpaid contributions, or
> > >
> > > (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under sub-paragraph (A),
> >
> > (D) reasonable attorney's fees and costs of the action, to be paid

14

by the defendant, and

(E) Such other legal or equitable relief as the court deems
appropriate.  For purposes of this paragraph, interest on unpaid
contributions shall be determined by using the rate provided under
the plan, or, if none, the rate prescribed under section 6621 of the
Internal Revenue Code of 1954.

Plaintiffs seek relief under subsections (A) through (D), namely, unpaid

contributions, interest, liquidated damages, attorney's fees, which are mandatory.  *See

id.* ("the court shall award the plan"); *Mile High Rodbusters*, 82 F. Supp. 3d at 1244.

### 1. *Unpaid Contributions*

With respect to unpaid contributions, *see* 29 U.S.C. § 1132(g)(2)(A), plaintiffs

state in the complaint that, on July 12, 2019, defendants entered into the Payment

Agreement and agreed to pay $34,463.31 for delinquent contributions.  Docket No. 1 at

6, ¶ 23.  As of the date of the complaint, accounting for all credits and payments, that

figure decreased to $20,596.03.  *Id.* at 7–8, ¶ 28.  However, this number includes

liquidated damages.  *Id.*  Plaintiffs further state that defendants are liable for delinquent

contributions after the Payment Agreement to the various plaintiffs.  *Id.* at 9, 12–14

¶¶ 37, 44, 47, 50.  In the motion, plaintiffs ask for contributions from April 2018 through

March 2019 included in the Payment Agreement for $14,556.93.  Docket No. 12 at 5,

¶ 19.  That figure is current as of April 7, 2021 and accounts for payments made since

the complaint was filed.  *Id.*  Plaintiffs note that, although they originally sought an

award of damages for November and December 2020 contributions and future

contributions that might accrue, after the complaint was filed, defendants paid the

November and December 2020 contributions, and plaintiffs learned that Watts Electric

15

employees did not perform any work after December 2020.  *Id.* at 7, ¶ 24.  Mr.

Ornelas's affidavit confirms these figures.  *See* Docket No. 12-2 at 5, ¶ 14 (reflecting

that, as of April 7, 2021, defendants owe $14,556.93 in contributions for April 2018

through March 2019).  The Court thus finds that plaintiffs have provided sufficient

evidence regarding these unpaid contributions of $14,556.93.  *See Mile High*

*Rodbusters*, 82 F. Supp. 3d at 1245 (citing *J&C Fabricating Co.*, 2009 WL 306731, at

*3).  The Court will therefore enter judgment against defendants for $14,556.93 in

unpaid contributions.

### 2.  *Interest Paid on Unpaid Contributions*

With respect to interest on unpaid contributions, see 29 U.S.C. § 1132(g)(2)(B),

plaintiffs provide evidence through Ms. Ornelas's affidavit that defendants owe $391.69

in interest on the April 2018 through May 2019 contributions, $1,519.95 in interest that

accrued before the Payment Agreement, and $69.13 in interest on the November and

December 2020 contributions.  Docket No. 12-2 at 5, ¶ 14.  The sum of these figures is

$1,980.77, which is what plaintiffs demand in their motion.  *See* Docket No. 12 at 8.

Plaintiffs have thus provided the Court with undisputed proof of the amount of interest

owed.  Therefore, the Court will enter judgment against defendants for $1,980.77 in

interest payments.  *See Mile High Rodbusters*, 82 F. Supp. 3d at 1245 (citing *J&C*

*Fabricating Co.*, 2009 WL 306731, at *3).

### 3.  *Liquidated Damages*

With respect to additional interest or liquidated damages, *see* 29 U.S.C.

§ 1132(g)(2)(C), plaintiffs provide evidence through Mr. Ornelas's affidavit that

defendants owe $3,263.15 in liquidated damages for April 2018 through March 2019 contributions included in the Payment Agreement.  Docket No. 12-2 at 5, ¶ 14.  This is consistent with the figure set forth in the Payment Agreement.  *See* Docket No. 1-1 at 2. Mr. Ornelas also states that defendants owe liquidated damages for the November and December 2020 contributions at $848.20.  Docket No. 12-2 at 5, ¶ 14.  The sum of these figures is $4,111.35, which is what plaintiffs demand in their motion.  *See* Docket No. 12 at 8.  Plaintiffs have thus provided the Court with undisputed proof of the amount of liquidated damages owed.  Therefore, the Court will enter judgment against defendants for $4,111.35 in liquidated damages.  *See Mile High Rodbusters*, 82 F. Supp. 3d at 1245 (citing *J&C Fabricating Co.*, 2009 WL 306731, at *3).

### 4. Reasonable Attorney's Fees and Costs

Sections 515 and 502(g) of ERISA, 29 U.S.C. §§ 1145, 1132(g)(2)(D), require defendants to pay plaintiffs' reasonable attorney's fees and costs in this action.  *See Mile High Rodbusters*, 82 F. Supp. 3d at 1245 (citing *J&C Fabricating Co.*, 2009 WL 306731, at *2, 3).  Plaintiffs indicate that they will seek reasonable attorney's fees and costs by separate motion and affidavit.  Docket No. 12 at 8.  The Court, therefore, declines to address attorney's fees, costs, or post-judgment interest at this time.

## IV.  CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Plaintiffs' Motion for Default Judgment Pursuant to Fed. R. Civ. P. 55(b) [Docket No. 12] is **GRANTED**.  It is further

**ORDERED** that default judgment shall enter in favor of plaintiffs and against

17

defendants.  It is further

**ORDERED** that plaintiffs shall be awarded $14,556.93 in unpaid contributions, $1,980.77 in interest, and $4,111.35 in liquidated damages against defendants, for a total award of $20,649.05.  It is further

**ORDERED** that, within 14 days of the entry of judgment, plaintiffs may have their costs by filing a bill of costs with the Clerk of the Court and may file a motion for attorney's fees that complies with D.C.COLO.LCivR 54.3.  It is further

**ORDERED** that this case is closed.


DATE December 28, 2021.


BY THE COURT:


PHILIP A. BRIMMER
Chief United States District Judge

18